# Keyes v. Viking Insurance Company of Wisconsin

C.P. of Monroe County, no. 5349 CV 2001.

*Jonathan J. Russell,* for plaintiff.
*Francis P. Burns III,* for defendant.

CHESLOCK, *J.,* November 21, 2001—Plaintiff commenced this action by complaint filed on July 20, 2001.

Defendant responded with timely preliminary objections. Plaintiff filed an amended complaint on or about August 21, 2001. Thereafter defendant filed preliminary objections seeking dismissal for failure to state a claim. Both parties submitted briefs on the preliminary objections and arguments were heard on November 5, 2001. Now we are ready to decide the matter. The relevant facts are as follows:

(1) On November 13, 1999, plaintiff sustained injuries from a head-on collision with an uninsured automobile. The accident was caused by the negligence of the uninsured driver.

(2) Plaintiff first made a claim under his own insurance policy that carried uninsured motorist coverage. He settled for the maximum amount under the policy, $100,000.

(3) Plaintiff also received that amount under his spouse's policy.

(4) Plaintiff then made a claim under his son's policy, insured by defendant, Viking Insurance Company.

(5) Defendant's policy provided a maximum of $15,000 in uninsured motorist claims.

(6) Defendant denied plaintiff's claim on the basis that he was excluded under the terms of the policy.

(7) Plaintiff alleges that his son resided in his household at the time of the accident.

(8) Plaintiff seeks damages for breach of contract and bad faith for refusing to honor the claim.

In ruling on preliminary objections we must accept as true all well-pleaded facts and reasonable inferences drawn therefrom. See *Dorfman v. Pennsylvania Social Services,* 752 A.2d 933, 936 (Pa. Commw. 2000). How-

ever, we need not accept any conclusions of law, unwarranted inferences, or opinion. *Id.* Moreover, we should sustain preliminary objections only when they are free and clear from doubt. *Id.*

Defendant's basic policy form in which plaintiff's son is the named insured defines "family member" as "a person related to you (insured) by blood, marriage, or adoption who is a resident of your household and who does not own an auto. This includes a legal ward or foster child." However, the basic exclusion in the policy reads:

"(1) We do not provide uninsured motorist coverage for bodily injury sustained: Part 'B': By any family member while occupying, or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy."

Part "C" of the policy addresses uninsured motorist coverage and provides for the payment of compensatory damages which "an insured is legally entitled to recover from the owner or operator of an uninsured vehicle because of bodily injury." This portion of the policy defines insured as "you or any family member." But, there is a specific exclusion for this part of the policy:

"We do not provide uninsured motorist coverage for bodily injury sustained:

"Part 'B': By a family member:

"(1) Who owns an auto, while occupying, or when struck by, any motor vehicle owned by you or any family member which is not insured for coverage under this policy . . . ."

Plaintiff essentially makes two arguments in defense of his amended complaint: (1) that he does not fall under the general exclusion of defendant's policy because he

does not fit the policy's definition of "family member" and (2) that defendant's definition of "insured" contravenes the statute and, therefore, we must grant relief under the statute. Plaintiff fails on both points, for the following reasons:

(a) Plaintiff argues that the intent of the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL) and its broader definition of insured was to protect plaintiff in this situation, where he is hit by uninsured and damage exceeds his own $100,000 protection limit. However, because we have different cars and different individuals with separate policies, the insurance company is justified in not expecting to pay. It is clear that two strong policy goals of the statute are in conflict, compensating the insured who is the victim of an uninsured's negligence and the need to reduce spiraling insurance costs.

This court finds that we do not even get to these policy matters, as the Third Circuit has spoken on this matter in *Troebs v. Nationwide Ins. Co.,* 1999 WL 79555. Namely, the exclusionary provision in the son's policy must be upheld. It is true that there are conflicting policies at issue. The MVFRL was designed to protect the insured driver from uninsured motorists. By the same token, it's meant to reduce the spiraling cost of car insurance. The facts in *Troebs,* including the exclusionary policy, are nearly identical to our case. *Id.* Plaintiff sustained injuries in his own vehicle in an accident caused by an unknown vehicle. *Id.* Plaintiff also had $50,000/$100,000 uninsured coverage that he settled for. *Id.* Thereafter he made a claim under his father's Nationwide policy, where his father was the only named insured. *Id.* We defer to the *Troebs* court's analysis.

"There is a correlation between premiums paid by the insured and the coverage claimant should reasonably expect to receive. Here (the uninsured) motorist chose not to purchase underinsured motorist coverage. In return for this choice, appellant received reduced insurance premiums . . . Thus the court concludes that giving effect to the household exclusion in this case furthers the legislative policy behind underinsured motorist coverage in the MVFRL since it will have the effect of holding the insured to his voluntary choice. Allowing the 'household exclusion' language to stand in this case is further bolstered by the intent behind the MVFRL, to stop spiraling costs of insurance. If plaintiff's position were accepted it would allow an entire family living in a single household with numerous automobiles to obtain underinsured motorist coverage for each family member through a single insurance policy on one of the automobiles in the household. If this result were allowed, it would most likely result in even higher premiums on all . . . since insurers would be required to factor expended coverage cost into rates charged for underinsured coverage.

"The same considerations and concerns apply to motorists who purchase insufficient underinsured coverage. Enforcing the exclusion keeps insurance costs in check because the insurer can accurately calculate the extent of its risk. Lower costs are a major objective of the MVFRL. Declaring the exclusion void could encourage household members to rely on whichever policy had the highest coverage. Following the *Hart-Eichelman* rationale, relatives would have incentive to purchase minimal first-party coverage, knowing that they could avail themselves of the highest limits within their household. Accordingly, the result would be higher premiums be-

cause insurers would charge added risk of inadequately insured family members. These strong public policy considerations, as perceived by the Pennsylvania Supreme Court favor enforcement of the household exclusion. *Id.*"

(b) Language in a normal insurance policy is to be determined by its ordinary meaning. The plaintiff cannot have it both ways. Essentially he argues for differing definitions of the term "insured" to suit his needs. Under either one, however, plaintiff cannot recover. First, if we use "insured" as defined under the statute to include any relative residing in the same household, plaintiff gets into the statutory protection, but he is then kicked out by the statutory exclusion provided for in part C of the policy. In his brief, plaintiff argues for the broader definition. Therefore, he cannot in midstream halt his course and argue that he does not come in under the exclusion. Secondly, it is not clear that plaintiff would come in under the broader definition, as defendant correctly argues that the cited language states that "insured" is a relative residing in the home of the named insured and not vice versa. Here, the named insured, the son, is residing in the house owned by the plaintiff, father. Either way, plaintiff fails to state a claim.

As noted earlier, the part C policy exclusion reads:

"(1) We do not provide uninsured motorist coverage for bodily injury sustained:

"(A) By *you* while occupying, or when struck by, any motor vehicle you own which is not insured for this coverage under this policy

"(B) By a *family member:*

"(1) who owns an auto, while occupying or when struck by any motor vehicle owned by you or any family

member which is not insured for this coverage under this policy."

We must give the terms their plain meaning. If the terms are clear and unambiguous, we must follow them. Even though the policy defined "family member" as not owning a car, clearly the exclusion contemplates those who do own a car. In other words, the policy expressly excludes any relative residing in the household who might otherwise qualify as "insured" but for the fact that their car is not insured in this policy. To read this section otherwise would make no sense; that is, a family member not owning an auto is canceled out since the policy is singling out only those family members that do own a separate auto.

Part "C" of the uninsured motorists coverage was designed to pay damages which an insured is legally entitled to recover from the owner of an uninsured vehicle, where "insured" includes any family member. However, what plaintiff did not include in the complaint was provision that excludes any family member owning an auto while occupying . . . any vehicle not insured for coverage under the policy. The significance is that even if we define insured as any family member or relative residing in the same household, plaintiff is still excluded under the part C exclusion.

(c) Finally, plaintiff cites no case law that supports protection under any other provisions of the statute. For example, section 1733, "Priority of recovery" of the MVFRL, is relevant where "multiple policies apply." Since we must follow the binding decision in *Troebs,* we cannot accept plaintiff's position that this section is applicable. 75 Pa.C.S. §1733 (West 2000).

We likewise must grant preliminary objections on the related matter of bad faith. Since plaintiff is not entitled to coverage, his claim of bad faith must therefore fail. There is no legal or logical basis to conclude otherwise. The bad faith claim is separate from the underlying contract only to the extent that the limitation period or other procedural reasons bar the contract claim. However, where a court finds there is no substantive breach of contract then the bad faith action must fail. As defendant argues in its brief, the Third Circuit has specifically distinguished situations where the statute of limitations expired from the case where there is no duty to defend and thus good reason to refuse to defend against a suit, which is clearly the situation here. *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.,* 193 F.3d 742, 751 n.9 (3d Cir. 1999).

## ORDER

And now, November 21, 2001 defendant's preliminary objections are hereby granted and we order that the case be dismissed.